UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD WILLIE WILLIAMS,

        Plaintiff

v.

UNKNOWN WADE and
CINDI S. CURTIN,

        Defendants.
                                                 /

Case No. 1:07-cv-1226

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion to dismiss or for summary judgment (docket no. 12).

        **I.**        **Background**

        Plaintiff sets forth the following allegations in his amended complaint. On December 3, 2005, defendant Wade closed the cell door on plaintiff's finger, cutting off a finger tip. Wade acted deliberately by failing to announce that he was opening or closing the cell doors and failing to re-open the door for plaintiff to remove his finger. When plaintiff's roommate returned, plaintiff ran to the unit control bubble to show Wade his injury. Wade did not provide any assistance. RUO Schiebnert gave plaintiff tissues and called Health Care. Plaintiff was sent to a hospital where his finger was stitched back together. Plaintiff seeks compensatory and punitive damages.

## II.     Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The court will treat defendants' combined motion as one for summary judgment under Fed. R. Civ. P. 56(b).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III.     Discussion

### A.     Defendant Wade

Plaintiff has raised two different types of Eighth Amendment claims against defendant Wade.  First, plaintiff alleges that Wade inflicted cruel and unusual punishment when he shut plaintiff's finger in the cell door.  Second, plaintiff alleges that Wade failed to treat his serious medical needs.

#### 1.     Injury inflicted on plaintiff's finger

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).  In analyzing plaintiff's claim, the court must examine whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 6.  Courts evaluate the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  *Id*. at 7, quoting *Whitley*, 475 U.S. at 321.

Courts must give deference to actions prison guards take to maintain prison discipline, as long as those actions are taken pursuant to a considered choice and not in bad faith or for no legitimate purpose.  *Whitley*, 475 U.S. at 321-22.  "[Not every] malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9.  Consequently, where the use of some force is required to restore order, it does not violate the Eighth Amendment unless the force used is "repugnant to the conscience of mankind" or the force is used "maliciously and sadistically

for the very purpose of causing harm." *Id.* at 9,10 (citations omitted). Pain inflicted "totally without penological justification" is considered unnecessary and unwanton and a violation of the Eighth Amendment. *See Hope v. Pelzer*, 536 U.S. 730, 737 (2002). While an Eighth Amendment claim need not include a "significant injury," a *de minimis* use of physical force will not support such a claim unless the force used is "of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10.

Plaintiff submitted three affidavits in support of his amended complaint. In his affidavit, I.B. Carethers stated that he witnessed Wade "intentionally playing and slamming the doors (shut)" on the day plaintiff suffered his injuries. Carethers Aff. at ¶ 4. Carethers stated that he witnessed Wade "making the door jump back and forward" and "slamming the cell door shut Catching Inmate William['s] finger in the Door Track." *Id.* at ¶ 5. Carethers also stated that he heard plaintiff "calling for the Officer to open His cell door because His Finger was caught in the door," but that Wade did not open the door until plaintiff's roommate returned. *Id.* at ¶¶ 6-7. Similarly, Tyrone Andrews states in his affidavit: that he witnessed Wade playing with the cell doors and slamming the doors shut on plaintiff's finger; that he heard plaintiff call for the officer to open the cell door because his finger was caught in the door; and that Wade did not open the cell door until plaintiff's roommate returned. Andrews Aff. at ¶¶ 3-7. The affiant in the third affidavit, Inmate "Austin #500802," did not witness the incident. Rather, Austin stated that on January 28, 2006, Wade "slammed the [cell] door shut" causing injuries to his shoulder and back and that Wade "has been Reported for slamming the cell doors on Inmates and causing Serious Injuries." *Id.* at ¶¶ 4-6.

In his affidavit, Wade states that plaintiff's injury did not rise to the level of an Eighth Amendment violation because it was the result of an accident:

3. On December 3, 2005, I was one of the officers in charge of lockup after the yard and/or day room was over. At this time, all inmates must return to their cell for lock up. As soon as we feel the inmates are in the cell, we close the doors.

4. During Mass Movement, while enclosed inside the bubble area, it was nearly impossible for me to hear what an inmate is saying. Therefore, there is staff present to watch and listen to what is happening in the bubble area.

5. Plaintiff's allegations that his finger tip could have been severed as the door was closing is not true. The only way plaintiff's finger tip could have been severed would be while the door was opening, not closing, because the handle slot on the inside of the door does not connect with the framework when the door is closed.

6. Plaintiff's finger tip was located inside the handle slot on the inside of his cell when Officer Schiebner and inmate Montgomery went to retrieve it after we learned what happened.

7. At no time did I ever intentionally try to hurt plaintiff.

8. Furthermore, plaintiff's allegations that I hurried the plaintiff's cell door shut is unfounded. The doors are designed to travel at a safe speed, giving inmates ample time to enter or exit their cell. The speed cannot be changed by an officer at any time.

9. Statements given by other inmates about me trying to play with the doors are not true. Sometimes inmates try to charge through the doors going in or out and get caught by the doors. Some intentionally stop in the doorway for whatever reason.

Wade Aff. attached to brief as Exh. A.

Plaintiff submitted one affidavit in opposition to the motion for summary judgment. In this affidavit, inmate Earnest L. Scruggs stated that on October 13, 2005, a different corrections officer closed a cell door on his arm. *See* Exh. 1 attached to plaintiff's response.

5

### 2. Failure to provide medical treatment

It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the infliction of serious pain. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In their affidavits, both Carethers and Andrews state that plaintiff called for the officer to open the cell door because it was caught in the door, that Wade did not open the cell door until plaintiff's roommate returned from the unit yard, and that plaintiff ran down to the Unit Control Panel (the "bubble") bleeding. Carethers Aff. at ¶ 7; Andrews Aff. at ¶ 7.

In his affidavit, Wade states that

> plaintiff's allegation that I ignored plaintiff's request for medical attention is untrue. Plaintiff reported the accident to another officer, RUO Schiebnert, who contacted Health Care immediately. Plaintiff was then transported to the local hospital for

6

>further treatment where he was treated for his injury, and subsequently returned to the facility.

Wade Aff. at ¶ 10.

### 3. Genuine issues of material fact exist

These affidavits create a genuine issue of material fact with respect to the events that gave rise to this action. It is uncontested that plaintiff suffered a rather significant injury when his finger tip was cut off. However, factual issues exist with respect to how this injury occurred. Plaintiff has submitted affidavits from two other inmates, Carethers and Andrews, in which these witnesses state that defendant Wade was playing with the cell doors, closed the cell door on plaintiff's finger and then did not respond to plaintiff's call to open the cell door. In his affidavit, defendant Wade states that he did not intentionally close the cell door on plaintiff's finger, that he could not control the speed of the cell door as it opened or closed, that it was "nearly impossible" for him to hear "what an inmate is saying" while in the bubble, and that based upon the location of plaintiff's fingertip inside the handle slot, plaintiff had to be injured when the cell door opened, not when the cell door closed. Viewing the facts in the light most favorable to plaintiff, the court concludes that he has submitted sufficient evidence to defeat defendant Wade's motion for summary judgment. Accordingly, defendant Wade's motion should be denied.

### B. Defendant Warden Curtin

Plaintiff makes no allegations against defendant Warden Curtin. For this reason alone, she should be dismissed from this action. The only possible theory that plaintiff can advance against defendant Curtin is one of respondeat superior. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir.

7

1995). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* There is no allegation, let alone evidence, that defendant Curtin participated in, authorized, approved or knowingly acquiesced in any unconstitutional conduct against plaintiff. Accordingly, defendant Curtin's motion for summary judgment should be granted.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss or for summary judgment (docket no. 12) be **GRANTED** as to defendant Curtin and **DENIED** as to defendant Wade.


Dated: October 29, 2008                           /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).