UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD WILLIAMS #237168,

    Plaintiff,

v.

    CASE NO. 1:07-CV-1226

    HON. ROBERT J. JONKER

ROGER WADE,

    Defendant.

_____/

**OPINION**

**Introduction**

Plaintiff Donald Williams brings this lawsuit under 28 U.S.C. § 1983, asserting violations of his civil rights under the Eighth Amendment. The case arises out of an injury Mr. Williams incurred when his cell door severed a portion of his fingertip. The morning the injury occurred, Mr. Wade staffed the central location from which all the cell doors in Mr. Williams's housing unit were opened and closed electronically. Mr. Williams alleges that Mr. Wade through the opening or closing of his cell door deliberately caused his injury, subjecting Mr. Williams to cruel and unusual punishment, and that Mr. Wade deliberately failed to respond to Mr. Williams's serious medical needs. A bench trial took place on March 2, 2010, and the parties filed written closing statements after trial (docket ## 73, 74). The Court has thoroughly reviewed the record and carefully considered the evidence and applicable law. The case is ready for decision.

Mr. Williams's witnesses at trial included Frank Weatherspoon; Jerome Montgomery; and Mr. Williams himself. Mr. Williams introduced no exhibits into evidence. Mr. Wade's witnesses at trial included Lavern R. Sharp, Jr.; Stephen Anderson; James Schiebner; and Mr. Wade himself. Mr. Wade also introduced into evidence Exhibit A, Critical Incident Report dated December 3, 2005; Exhibit B, a DVD recording; and Exhibit D, a Step 1 Grievance. In making its findings of fact, the Court relies on its observations of the witnesses in open court and its assessment of the exhibits introduced as evidence at trial.

**Undisputed Facts**

In December 2005, Mr. Williams was a prisoner at the Oaks Correctional Facility ("Oaks") in Manistee, Michigan, and Mr. Wade was a Michigan Department of Corrections employee at Oaks. (Tr. at 40, 139.) The morning of December 3, 2005, when the injury to Mr. Williams occurred, Mr. Wade was working in the control center area, sometimes referred to as the "bubble," in Cell Block 7, the housing unit where Mr. Williams resided. (Tr. at 40, 140.) From the bubble, Mr. Wade operated the opening and closing of cell doors electronically, using toggle switches that allowed the doors to move all the way to the right, all the way to the left, or to the center. (*Id.* at 140.) It takes approximately five seconds to seven seconds to open a cell door. (*Id.* at 114.) Mr. Williams's cell was approximately 100 feet from the bubble. (*Id.* at 141.)

On the morning of December 3, 2005, as on most mornings, the denizens of Cell Block 7 had the option of going to the prison yard, the day room, or staying in their cells for a period of time, after which those who have been to the yard or day room return as a group to their cells. (*Id.* at 41.) At approximately 9:00 a.m. on December 3, 2005, such a mass movement of prisoners back to the cell block took place. (*Id.* at 140.) From his post in the bubble, Mr. Wade opened and closed doors

all along the cell block as the prisoners returned to their cells. (*Id.* at 140-42.) Around the same time, Mr. Williams's injury occurred. As discussed below, the parties disagree about the factual circumstances of the injury, but it is undisputed that some part of the door of Mr. Williams's cell severed one of the fingertips of his left hand. It is also undisputed that as soon as Mr. Williams was able to exit the cell, he ran down to the bubble to seek assistance. (*Id.* at 51.) According to Mr. Williams's own testimony, once he reached the bubble he waited "30 seconds, if that," before an MDOC officer, Officer Schiebner, came and helped him. (*Id.*) Officer Schiebner gave Mr. Williams some tissue to stanch the bleeding, and he called health services. (*Id.* at 52.) Mr. Williams retrieved his fingertip, and he was sent on to the medical center in his facility. (*Id.* at 52-53.) At the medical center, a medical practitioner wrapped his finger up and sent him to the outside hospital to reattach the fingertip. (*Id.* at 53.) At the hospital, his fingertip was reattached. (*Id.*) When Mr. Williams returned from the hospital, he was placed in the segregation unit for approximately one or two hours, then moved back into his cell. (*Id.* at 54.) He received pain medication within approximately four hours. (*Id.* at 55.) Mr. Williams's finger did not initially heal properly, and medical practitioners went on to perform a skin graft, which succeeded. (*Id.* at 54.) Mr. Williams testified that he had recovered within approximately two months. (*Id.* at 55.) He testified further that he received prompt treatment from both the medical center in his facility and the outside hospital. (*Id.* at 73.) He stated that the hospital "did everything that they possibly could do to help me." (*Id.* at 74.)

## Disputed Facts

The parties diverge primarily in their accounts of how Mr. William's injury occurred. According to Mr. Williams, as he was walking back to his cell from the day room the morning of

December 3, Mr. Wade was opening and shutting cell doors randomly, playing with the doors. (*Id.* at 43-44.) Mr. Williams testified that when he reached his own cell door, the door was "partially open," and when he attempted to enter his cell, the cell door, operated by Mr. Wade, pinned him. (*Id.* at 44.) Mr. Williams testified that in attempting to free himself from the door, he twisted around, jerking his right shoulder forward, and catching his left hand in the cell door. (*Id.* at 46.) When the door caught his left hand, stated Mr. Williams, he felt intense pain and had difficulty extricating his hand. (*Id.* at 47.) Mr. Williams explained that he pulled hard to remove his hand, and that in the course of this motion, the tip of his ring finger was severed. (*Id.*) Upon extricating his hand, he noticed that his finger was bleeding profusely, and he realized that he needed medical attention. (*Id.* at 48.) However, at that point, Mr. Williams asserted, his cell door was closed, and he beat the door and tried unsuccessfully to open the door. (*Id.*) According to Mr. Williams, he pulled on a small dip on the inside of the cell door to try to draw the door open. (*Id.* at 49.) He was not able to open the door himself, but his bunkmate returned, and the door was opened so that his bunkmate could enter the cell. (*Id.* at 50.) Mr. Williams then ran out to seek assistance for his injury. (*Id.* at 51.)

Other evidence presented at trial told a different story. Frank Weatherspoon, whose cell was located directly across the hall from Mr. Williams's cell, testified that he witnessed the injury. (*Id.* at 21.) According to Mr. Weatherspoon, Mr. Williams was inside his cell at the time the injury occurred. (*Id*. at 23, 24.) Mr. Weatherspoon testified that as Mr. Williams's cell door was being opened, his hand got caught in the door. (*Id.* at 23, 24.) This testimony is consistent with a critical incident report a reporting officer filed later on the day the injury occurred. (Def.'s Ex. A.) The critical incident report states that Mr. Williams "was already in the cell because he did not go to the

yard. As the door was opening Williams put his hands on the door jam [sic]. At this time with Williams's hands on the door he jumped back screaming." (*Id.*) Similarly, Mr. Williams acknowledged at trial that when he filed a Step One grievance with the prison officials soon after the incident occurred, he made no mention of having been pinned in the door. (Tr., docket # 72, at 61–63.) Mr. Williams also acknowledged that his Step Two grievance did not mention his being pinned by the door. (*Id.* at 67–68.) Rather, in each grievance Mr. Williams stated that the closing door cut off the tip of his finger instantly. (*Id.* at 62, 67.)

Mr. Williams's testimony regarding what happened after his cell door opened is for the most part uncontradicted, with one striking exception. While Mr. Williams testified that he found his fingertip on the floor, two eyewitnesses, Mr. Weatherspoon and Mr. Williams's bunkmate, Jerome Montgomery, testified that Mr. Williams found his fingertip still in the frame of the door. (*Id.* at 25, 35, 52.) Mr. Weatherspoon and Mr. Montgomery's testimony comports with that of Lavern R. Sharp, Jr., administrative assistant to the warden at Oaks in December, 2005 and now an assistant deputy warden at Oaks, and Stephen Anderson, a maintenance mechanic employed by the MDOC for approximately twenty-four years at the time of trial. (*See id.* at 80-90; 109.) Mr. Sharp testified that cell doors such as the one on Mr. Williams's cell have a recessed door handle set approximately four to six inches on the inside of the door. (*Id.* at 91.) Mr. Anderson testified that cell doors such as the one on Mr. Williams's cell weigh approximately 180 to 200 pounds each, and the edges of the doors are rounded over. (*Id.* at 110.) Both Mr. Sharp and Mr. Anderson posited that a cell door trapping fingers would be more likely to cause a crushing injury than a cut. (*Id.* at 106, 115.) Mr. Sharp testified that the only part of the door that might have the capability of severing a fingertip would be the recessed handle. (*Id.* at 107.) Mr. Sharp noted that unlike the rest of the door, the

5

recessed handle has "a little bit of an edge to it," and "[a]s the door slides open, there's a relatively tight tolerance between the door itself and the door frame on that left edge. . . . That is one of the few spaces I can think of where it would be reasonable to conclude that you could actually cut something." (*Id.*)

### Discussion

*1.    Mr. Wade did not inflict cruel and unusual punishment on Mr. Williams.*

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillan*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993)). Courts must give deference to actions prison guards take to maintain prison discipline, as long as those actions result from a considered choice, not from bad faith or for no legitimate purpose. *Whitley*, 475 U.S. at 321-22. An Eighth Amendment claim need not include a "significant injury," but a de minimis use of physical force will not support such a claim unless the force used is "of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10.

The only evidence offered in support of Mr. Williams's claim that Mr. Wade while playing with the cell doors recklessly or intentionally allowed a cell door to pin Mr. Williams in his doorway, causing the severing of Mr. Williams's fingertip, comes from Mr. Williams himself. The Court does not find Mr. Williams's testimony credible on these points. No other witness claims to have seen Mr. Wade playing with the cell doors. Only Mr. Williams testifies that he was injured in the doorway while returning to his room. Mr. Weatherspoon, an eyewitness, testified that Mr. Williams was in his cell when the injury occurred, and the incident report prepared the day of the injury also states that Mr. Williams was inside his cell at the time of the injury. Mr. Williams's own description

6

of being pinned by the door, making a twisting motion, and having his finger caught in the door is implausible at best. As Exhibit B and the trial testimony reflect, the cell doors move slowly, requiring approximately five to seven seconds to open or close completely. It is impossible to visualize how, if Mr. Williams managed to twist away from the door, his hand could have gotten caught in the closing door. Moreover, even if his hand had been caught, credible testimony from Mr. Sharp and Mr. Anderson reflects that Mr. Williams would more likely have had his fingertip crushed than severed. There is no sharp edge of the closing door that could have severed his finger. There is, however, a sharp edge of the door handle that could have severed a fingertip if Mr. Williams had his hand in the handle from inside the cell while the door was opening. This would be consistent with the testimony of Mr. Weatherspoon, who stated that Mr. Williams was inside his cell when the injury occurred. It would also be consistent with Mr. Weatherspoon and Mr. Montgomery's testimony that Mr. Williams's fingertip was found in the door frame itself, not on the floor. Officer Schiebner testified that when he came to the cell after dispatching Mr. Williams to medical services, he found blood in the handle opening, further support for the proposition that Mr. Williams's hand was in the door handle when the injury happened. (*See* Tr., docket # 72, at 123.)

In short, this injury could not have occurred the way Mr. Williams describes. Instead, the Court finds that the injury to Mr. Wade occurred when Mr. Williams's finger accidentally caught in the handle of an opening cell door. The Court finds that Mr. Wade had no intention to harm Mr. Williams in any way, and that Mr. Wade was simply opening and closing cell doors in the course of his normal duties in a mass movement of inmates. Accordingly, Mr. Williams's claim of cruel and unusual punishment in violation of the Eighth Amendment cannot succeed.

      2.      *Mr. Wade was not deliberately indifferent to Mr. Williams's serious medical needs.*

A claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the infliction of serious injury. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). To establish the subjective component, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Mr. Williams seems to argue that Mr. Wade was deliberately indifferent to his serious medical needs because when Mr. Williams ran to the bubble to seek help for his injury, Mr. Wade did not respond immediately. (Tr., docket # 72, at 51.) But there was no time or opportunity for Mr. Wade to leave his post in the bubble and to respond directly. Instead, Officer Schiebner came to the immediate aid of Mr. Williams. Mr. Williams himself agrees that he waited no more than "probably about 30 seconds, if that." (*Id.*) The evidence, including Mr. Williams's own testimony, does not reflect obduracy or wantonness. On the contrary, Mr. Williams received prompt and effective first aid from Mr. Wade's colleague, prompt and effective transportation to the hospital, and prompt and effective medical treatment. His injury healed within about two months. Accordingly, Mr. Williams's claim of deliberate indifference to his serious medical needs in violation of the Eighth Amendment fails.

**Conclusion**

Mr. Williams's claims fail. Judgment shall enter in favor of Defendant Wade and against Plaintiff Williams.


Dated:     August 11, 2010            /s/ Robert J. Jonker
                                                      ROBERT J. JONKER
                                                      UNITED STATES DISTRICT JUDGE